UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
*ELECTRONICALLY FILED*

JAMES R. NEWTON

        Plaintiff,                      CIVIL ACTION NO. 3: 18-cv-00497-RGJ

  v.

AIR SYSTEMS, INC.

        Defendant.

| GARRY R. ADAMS | DINSMORE & SHOHL, LLP |
|---|---|
| A. PETE LAY | By: Andrey Tomkiw |
| Adams Landenwich Walton, PLLC | Pro Hac Vice Admission |
| 517 W. Ormsby Avenue | 900 Wilshire Drive, Suite 300 |
| Louisville, Kentucky 40203 | Troy, Michigan 48084 |
| (502) 561-0085 | (248) 647-6000 |
| garry@justiceky.com | Andrey.tomkiw@dinsmore.com |
| pete@justiceky.com | *ATTORNEYS FOR DEFENDANT* |
| *ATTORNEYS FOR PLAINTIFF* | |

## DEFENDANT'S PRETRIAL MEMORANDUM BRIEF

### I. DEFENDANT'S STATEMENT OF THE FACTS

Plaintiff alleges he is owed unpaid commissions from his work as an employee of ASI. ASI counters that, at all times Plaintiff was a salaried employee who was not entitled to commission payments and ASI never agreed to pay him a commission. Although, there were times that Plaintiff was given additional compensation, these bonuses were at times and in amounts that were not tied to any specific projects or identifiable sales. Even though these additional compensation payments were sometimes classified as commission payments on Plaintiff's pay records, the fact that this classification was the easiest choice from a dropdown box on the payroll software does not give Plaintiff a valid basis for his claims.

ASI repeatedly encouraged Plaintiff to switch from a salary-based to a commission-based sales representative, but Plaintiff repeatedly expressed his desire to not be commission-based since he had a need for regular income and could not risk the ebbs and flows associated with truly being a commission-based employee. Plaintiff was simply too money-motivated – as evidenced by his near constant requests for salary bumps and other benefits – to ever gamble that there would be months where he did not earn a paycheck.

      i.      **Plaintiff's Employment with ASI**

In January 2011, Plaintiff was offered a job as a sales employee with ASI in order to run their Kentucky operations. Plaintiff claims that, as part of his offer of employment, he was told he would receive both salary and commission, with commission being a 50-50 split between him and the company. He testified he was initially paid $75,000 per year, and was given a raise in salary whenever he asked for one, eventually making more than $130,000 per year. Plaintiff admitted that, at the time he was hired, there was nothing in writing about either him being a commission-based employee or the terms and conditions of any commissions he was allegedly entitled to. Plaintiff called his understanding of the initial terms and conditions of his compensation "barbaric" and was only given a very few basic details.

Despite Plaintiff's claim that he was paid both a salary and 50% commission at his time of hire, the universal understanding at ASI was that Plaintiff was salary only. For example, Tinsley, ASI's President, testified that, at all times during Plaintiff's employment, he was a salaried employee. In fact, the only commission-based employee in the entire company was an employee named Steve Waynick. Doug Roehl, a 25-year employee and salesman with ASI, testified that Plaintiff was salaried since there is only one employee in the office (Waynick) who is commission-based. Deborah Cooley, the payroll and human resources manager for ASI who was employed at

the time that Plaintiff was hired, likewise testified that the only employee of ASI who is commission-based is Waynick.

Waynick, who has been in sales with ASI for almost 20 years, testified that, when he was in the same position as Plaintiff, he received a straight salary with additional compensation bonuses. However, in 2009, after a discussion with Tinsley, Waynick changed his compensation structure to go purely commission-based. Interestingly, Waynick testified that his commissions are capped at 25% of the profit on any given job, commission sales account for 100% of his compensation with ASI, and he otherwise receives no monthly draw. Finally, Waynick testified that, in order to be paid his commission, he had to submit commission calculation paperwork for each and every job that he was paid commission on. Cooley testified that Waynick is only paid after his commission paperwork has been submitted to her and approved by Tinsley.

Plaintiff testified that he had never even seen, let alone utilized, the commission sheets used by ASI to track annual commissions. Likewise, Plaintiff was shown Commission Job Reports and Re-Sell Commission Reports that were submitted by Waynick. Again, Plaintiff testified that he had never filled out any Commission Reports, and indeed had never even seen these documents prior to his deposition. Tinsley testified that these were the commission sheets filled out by Waynick and which were required for each and every job that a commission was either requested or was to be paid on.

    ii.    **Evidence of Being Commission-Based**

When asked if there were documents or agreements which support his allegations that he was a commission-based employee, Plaintiff testified that "there's no official agreement," but he believes an e-mail sent from Tinsley to Plaintiff on September 24, 2013 ("Tinsley E-mail") establishes his right to be paid commissions. According to Plaintiff, the Tinsley E-mail forms the

3

sole basis of his breach of contract claim. Tinsley, testified this was put together in order to give Plaintiff a visual representation of what it would look like if Plaintiff were to switch from salary to commission. Logically, this makes sense, as the e-mail starts with a statement that it is a "new format" being proposed to Plaintiff, which then had to be explained in great detail to Plaintiff, and even then Tinsley was concerned that Plaintiff would not understand the e-mail. Finally, Plaintiff has failed to produce any documents or evidence to show that there was any follow-up on this e-mail from Tinsley to Plaintiff and testified that there was no further discussion or negotiation, including no response to Tinsley's request that Plaintiff call him to discuss the e-mail further. Instead, Plaintiff attempts to manipulate a couple of facts in an attempt to show that he was a commission employee.

        1.        **Additional Compensation Designated as "Commission"**

First, Plaintiff alleges he had a few payroll reports that had payments labelled as "commission." All of the other payments on all of the other checks were designated as "salary." However, when facts concerning the "commission" payment are explored, it becomes clear this is a red herring argument. For example, on March 30, 2012, Tinsley e-mailed Cooley telling her to run a special payroll for Plaintiff for $15,000 after all taxes and deductions. When Cooley asked if it should be run as salary or commission, Tinsley responded to classify it as commissions. This was because, as Cooley testified, those were the only two options that were utilized in the payroll system. Tinsley also testified these were not commission payments, but were merely additional compensation payments.

While Plaintiff maintains this was a true commission, his own testimony belies his belief. Plaintiff testified there were occasions where he would go to Tinsley to ask for some additional money and admitted it likely happened in 2012. When asked if this $15,000 was one of those

4

instances, Plaintiff testified he couldn't remember any discussions related to this payment. Further, Plaintiff admitted that he has no idea where the number came from, no idea who came up with the number, no idea how it was calculated, and could not tie it to any specific project. Finally, as Plaintiff admits, there are no commission reports or requests that were tied to this payment. This same process and testimony played out for the three or four other examples of payroll report "commission" payments that Plaintiff is attempting to rely on.

For someone who worked on over 50 unique projects in his time at ASI, it defies logic that "commission" payments were only paid once or twice per year and in amounts that are nice, round numbers. Frankly, if these were truly commission payments, not only would Plaintiff have submitted some type of commission calculation, but he would have been demanding commission payments on all cleared jobs – neither of which he ever did. Instead, Plaintiff continued to work for ASI for almost five years after the Tinsley E-mail, was given every raise he asked for, and was permitted a lookback the only time he ever asked for one.

### 2. 2015 Lookback

Second, Plaintiff claims that he was given a "lookback" in the middle of 2015 and was paid a commission on the prior years he worked for ASI. However, Plaintiff admitted that he was remodeling his kitchen in 2015 and needed some extra money. He admitted that most of the $54,000 payment was indeed spent on the kitchen. Finally, Plaintiff admitted that he never asked for another look back, either before or after 2015, and even went multiple years without ever asking for any type of commission payments, both before and after 2015.

When asked for his recollection of the lookback, Tinsley testified that Plaintiff called him, indicated that he had some expenses, including a major kitchen renovation project, and asked for a lookback. Tinsley agreed to the exercise because Plaintiff had been profitable up to that point,

5

they were trying to entice him to go from salary to commission, and they wanted to help him out. However, Tinsley was very specific that this was not a commission payment, because Plaintiff was never a commission-based salesman, but repeatedly classified it as nothing other than additional compensation.

### iii. Separation of Employment

By the beginning part of 2018, Plaintiff's sales had been reduced to almost nothing and he was not generating any new leads. Tinsley had requested that Plaintiff start producing his sales reports and customer call sheets to monitor Plaintiff's sharply declining work performance, but Plaintiff refused to do so over the course of several months. In the spring of 2018, there was a meeting between Plaintiff and Tinsley regarding Plaintiff's strange behavior, refusal to produce the requested documents, slipping sales, and poor performance. Ultimately, Tinsley informed Plaintiff that he was going to have to reduce his salary based on a prolonged period of little or no sales. Plaintiff testified that he decided to quit after that May 16, 2018 phone call, and never saw or spoke with Tinsley again. More than a month later, Plaintiff submitted his resignation, but not before spending the last several weeks at work sending out resumes, looking for employment opportunities, and copying ASI's confidential and proprietary information.

## II. ISSUES OF FACT FOR TRIAL AND DEFENDANT'S POSITION

1. **Can Plaintiff establish that the Tinsley E-mail constituted an enforceable contract for commissions between the parties?** ASI contends that there is not a enforceable contract, as the Tinsley E-mail fails to meet all of the elements of a contract under Kentucky law.

    a. **Did the Tinsley E-mail constitute an offer?** ASI contends that the Tinsley E-mail was a hypothetical scenario created to give Plaintiff a visual representation of what

it would look like if he converted from salary to commission. It was not intended to be a formal offer. By its own terms, it required additional discussion and negotiation before anything was implemented.

b. **If so, did Plaintiff unequivocally accept the offer?** ASI contends that Plaintiff failed to accept any offer, as Plaintiff testified that he never follow-up on the e-mail and has no evidence that he indicated his intent to have the Tinsley E-mail become and employment agreement between the parties.

c. **Does the Tinsley E-mail contain full and complete terms?** ASI contends that the fact that the E-mail required additional discussion and negotiation means that it did not contain full and complete terms under the law. Instead, it requires too much conjecture on what the full terms and conditions would be as it relates to Plaintiff's employment with ASI.

d. **Is there adequate consideration from both parties for the alleged contract?** ASI contends that Plaintiff did not offer any additional consideration for any new terms and conditions in the Tinsley E-mail. Instead, Plaintiff continued to in his regular employment with ASI.

e. **Did ASI intend to be bound by any terms and conditions in the Tinsley E-mail?** ASI contends that it never had any intent to be bound by the hypothetical scenario contained within the Tinsley E-mail. Instead, the Tinsley E-mail was intended to be a starting point for additional conversation and negotiation.

f. **Was Plaintiff ever paid any commissions for his work for ASI?** ASI contends that Plaintiff was never paid any commissions. He was given additional compensation at various times during his employments, but these were at amounts

and times that were ties to any specific job. Likewise, other than the lookback in 2015, Plaintiff never requested any commission payment.

2. **Is Plaintiff entitled to any commissions for the years 2015 and 2016?** For all of the reasons throughout, ASI contends Plaintiff is not entitled to any commissions.

3. **In the absence of a written contract, can Plaintiff show that equity requires additional compensation?** ASI contends that Plaintiff is not entitled to any additional compensation from ASI, as he was highly compensated throughout his employment and received numerous bonuses and other benefits.

   a. **What material facts were either misrepresented or concealed to Plaintiff?** ASI contends that there were none.

   b. **If any material facts were either misrepresented or concealed, how did their misrepresentation of concealment cause Plaintiff to act in a way that he would not have otherwise?** ASI contends that no material facts were misrepresented. Additionally, Plaintiff failed to produce any evidence that, had it not been for the Tinsley E-mail, he would have taken some other action. In fact, Plaintiff continued to work for ASI for almost five years after the Tinsley E-mail, was given every raise he asked for, and was permitted a lookback the only time he ever asked for one.

   c. **Did Plaintiff rely on the Tinsley E-mail for any material purpose?** ASI contends that Plaintiff did not materially rely on the e-mail for purposes of his compensation. Plaintiff has not presented any evidence that the Tinsley E-mail was designed to prevent Plaintiff from seeking other employment or could reasonably be expected

      to induce some other action or forbearance from Plaintiff – other than continuing to do his job where he made a six-figure salary.

   d. **If so, how did such reliance cause him to materially change the position he was in?** ASI contends that Plaintiff did not materially change his position. Stated another way, before the Tinsley E-mail, Plaintiff was a regional salesman working for ASI and running their Kentucky operations while allegedly being compensated on both a salary and commission basis. After the Tinsley E-mail, Plaintiff was a regional salesman working for ASI and running their Kentucky operations while allegedly being compensated on both a salary and commission basis.

   e. **Did Plaintiff receive compensation, or something else of value, for his work on behalf of ASI?** ASI Contends that Plaintiff received something of significant value for his work for ASI. Specifically, Plaintiff was given an annual salary that began at $75,000 and eventually topped $130,000, he was given pay raises whenever he asked, he was given bonuses or additional compensation whenever he asked, he was given a $54,000 bonus when he was remodeling his kitchen, he was given access to Tinsley's vacation property in Florida free of charge, he was given a gas card that he used for personal use, and ASI paid for approximately $30,000 of his son's tuition at the University of Louisville.

4. **If Plaintiff is awarded unpaid commissions, what setoff is ASI entitled to?** Plaintiff testified that his "salary" was a draw against commissions. If this is true, ASI is entitled to a setoff on any salary that was paid in 2015 and 2016.

### III.    DISPUTED ISSUES OF LAW AND DEFENDANT'S POSITION

1. **Is the Tinley E-mail an enforceable Contract?** ASI contends that, as a matter of law, the Tinsley E-mail cannot be considered a contract under Kentucky law. Namely, the Tinsley E-mail, on its face and without any interpretation, calls for additional discussion and does not contain all of the terms and conditions of Plaintiff's employment. In such situations, courts have held that, as a matter of law, there is no enforceable contact between the parties.[1] Moreover, Plaintiff has failed to produce any evidence to show that there was an intent to be bound by ASI or a valid acceptance by Plaintiff, which defeats his claim as a matter of law.[2]

2. **If the Tinsley E-mail is an enforceable Contract, can Plaintiff maintain his equitable claims?** ASI contends that the law requires dismissal of equitable claims where there is an express contract covering the same subject.[3]

3. **Can Plaintiff's equitable claims survive where Plaintiff has failed to plead to show any detrimental reliance?** ASI contends that the law requires some detrimental reliance and material change of Plaintiff's position in order to have colorable equitable claims.[4] Because Plaintiff has not shown any change in his material position, his equitable claims fail as a matter of law.[5]

---

[1] *ZelTiq Aesthetics, Inc. v. Medshare, Inc.*, No. 3:14-CV-213-CRS, 2015 U.S. Dist. LEXIS 68908, *4, (W.D. Ky. May 28, 2015)

[2] *Fugmann v. Detmer*, No. 5:18-CV-358-KKC, 2019 U.S. Dist. LEXIS 118629 (E.D. Ky. July 17, 2019).

[3] *Tractor & Farm Supply v. Ford New Holland*, 898 F. Supp. 1198, 1205 (W.D. Ky. 1995) (holding that a promissory estoppel claim fails where there is an express contract covering the same subject); *Furlong Dev. Co., LLC v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 40 (Ky. 2016) (holding that an unjust enrichment claim fails where there is an express contract covering the same subject).

[4] *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 403 (6th Cir. 2006); *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003).

[5] *Jackson v. JB Hunt Transp., Inc.*, 382 S.W.3d 177, 185 (Ky. Ct. App. 2012).

4. **Does Plaintiff's compensation and other benefits defeat his unjust enrichment claim?**

   ASI contends, as explained previously, that Plaintiff received an annual salary that began at $75,000 and eventually topped $130,000, he was given pay raises whenever he asked, he was given bonuses or additional compensation whenever he asked, he was given a $54,000 bonus when he was remodeling his kitchen, he was given access to Tinsley's vacation property in Florida free of charge, he was given a gas card that he used for personal use, and ASI paid for approximately $30,000 of his son's tuition at the University of Louisville. Under Kentucky law, only "payment for its value" is required, not adequate or full payment for value.[6] Thus, as long as Plaintiff received some value – even if less than expected – the unjust enrichment claim fails.

5. **Does the bona fide dispute between the parties regarding the payment of commissions defeat Plaintiff's Kentucky Wage and Hour Act claim?** ASI contends the KWHA is not applicable where the wage (or commission) at issue is in dispute.[7] As explained by the *Kimmel* Court, "[s]imply put, we do not believe the legislature intended KRS 337.060 to apply where there exists a *bona fide* dispute concerning wages." ASI believes that this matter constitutes a bona fide dispute that would defeat Plaintiff's KWHA as a matter of law.

---

[6] *Taylor v. Univ. of the Cumberlands*, No. 6:16-CV-109-CFVT, 2017 U.S. Dist. LEXIS 17005, *47-48 (E.D. Ky. February 7, 2017) (unjust enrichment claim fails where plaintiff was compensated in some manner for the work performed); *Wise v. Alpha Leasing Co.*, 2003 Ky. App. Unpub. LEXIS 743, *14-15 (Ky. Ct. App. August 8, 2003) (no unjust enrichment where some value received, even if far less than what was bargained for).

[7] *Kimmel v. Progress Paint Mfg. Co.*, 2003 Ky. App. Unpub. LEXIS 1, *9 (Ky. Ct. App. January 10, 2003); *Bowman v. Builder's Cabinet Supply Co.*, No. 04-201-DLB, 2006 U.S. Dist. LEXIS 62712 * 29-30 (E. D. Ky. August 23, 2006).

Respectfully submitted,

**Dinsmore & Shohl LLP**

*/s/ Andrey T. Tomkiw*
Andrey T. Tomkiw (P47341)
*Pro Hac Vice*
900 Wilshire Drive Suite 300
Troy, MI 48084
Andrey.tomkiw@dinsmore.com
248-647-6000
(248) 647-5210 (Fax)
*Counsel for Defendant Air Systems*

Dated: February 10, 2020

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Della A. Sugars*
Della A. Sugars